Thank you, your honors. May it please the court, George Barbatsuli from the law firm K&L Gates and I represent the plaintiff appellant Global Rescue Jets, LLC. The question on this appeal is whether the district court properly dismissed Jet Rescue's complaint for failure to exhaust administrative remedies under the Medicare Act. And that issue requires this court to consider three sub-issues. The first is an issue of a threshold issue of first impression in this court and that is whether a Medicare Advantage organization such as the appellee Kaiser Foundation Health Plan qualifies and meets the definition of officer or employee of the government for purposes of the exhaustion requirement when administering a Medicare Advantage plan and in particular whether Kaiser is an officer or employee when it's administering optional supplemental benefits which were at issue in this case. Second, if Kaiser were to qualify as a as an officer or employee for purposes of the exhaustion requirement, the next issue would be whether this claim actually arises under the Medicare Act. And then the third issue is whether assuming that the case does arise under the Medicare Act, whether Jet Rescue would meet the three-part standard for waiver of that exhaustion requirement under the Johnson versus Shalala case, collaterality, irreparability, or futility. I would like to start with the threshold issue because I think it's very important and it's an issue that this court really would be addressing on a clean slate. It's an issue that hasn't been addressed directly by this court, but it has been touched on by other courts. And the question is whether a Medicare Advantage organization even qualifies as an officer or employee of the federal government within the meaning of section 405H of the Social Security Act which is made applicable to the Medicare Act by virtue of 42 U.S.C. 1395 double I. We all agree, I think the parties do agree, that Medicare exhaustion applies only to claims that would be against an officer or employee of the United States or the Secretary of Health and Human Services. A finding that Medicare Advantage organizations do not qualify as officers or employees is, again, a question of first impression in this court, but it is supported by the text of the Medicare Part C statute, regulations issued under Medicare Part C and case law outside of this jurisdiction. Counselor, let me ask you this. Obviously, sometimes Congress's drafting is not as exact as courts would love them to be, but in this case, they basically took the law that existed with respect to Parts A and B and grafted it on to C, and, of course, nobody seems to question what happens in that setting. But if you're right, since the judicial review provision imposes only a $1,000 amount of controversy requirement, by what I saw in the briefs, in 2021, more than 26 million people were enrolled in a Medicare Advantage plan accounting for 42% of the total Medicare population. If the federal courts had jurisdiction over those cases, we would have no time to do anything else, would we? I don't think so, and the reason is that it can be found in the text of the Medicare Advantage, the Part C statute that robust provision for enrollees to pursue disputes that arise under Medicare Advantage plans. There is the concern about a large number of cases really wouldn't come to pass because those would be most of the disputes, which are enrollee disputes, would be, could be, and would be likely funneled through that process. But what we're talking about here is a dispute that's really separate from what a Medicare Beneficiary... You're talking about the assignment aspect? No, I'm talking about, when you say the assignment aspect, we're proceeding, I guess, under theories of state law that are really separate, that are obviously not Medicare-related claims, but the dispute here is a dispute not over coverage, because I think everybody agrees that the services were indeed provided. The question really becomes a dispute over the reimbursement that was provided to Jet Rescue, who stands in a little bit of a different posture from the enrollee in this case. That's the assignment aspect, right? Yes, as an assignee, correct. Okay, so in this case, you're talking about rates, which of course normally would be covered within the Medicare calculations, but are you basing this on your UCL claim? In part on the UCL claim, that is one claim that we... So is that claim, what, for false advertising? Essentially, that's essentially how we characterize it in the complaint. And was there an assignment of a false advertising claim by the beneficiaries of the flight? Well, we say in our pleadings that the entire, you know, all the beneficiaries' rights were assigned, but so we do say that they're, you know, we are proceeding in that capacity as an assignee, but we're also proceeding, you know, on our own behalf as a party that was aggrieved, that did provide the services to the beneficiary. But it's a, I guess what I'm struggling with is this, if it's a false advertising claim, then I get why you would want an injunction and so on, but you're talking about rates. And rates has nothing to do with false advertising. That's a Medicare benefit. You're saying that you provided benefits under Part C and you didn't get enough. There needed to be something done on the rate, but if you have a rate claim, then arguably you have to go into an exhaustion situation, do you not? I don't think you have to when you're dealing with private parties who have, you know, in the context of private billing disputes, and I think the case that is most on point there is the Rencare case out of the Fifth Circuit, which made clear that where, as here, no government funds are at risk because these are optional supplemental benefits that are excluded from the, you know, that are not Medicare benefits. But again, to me, that's kind of a term of art you're saying here, but as you know better than I do, Part C, that's almost entirely the private sector. All kinds of people offer Part C. It's a private sector. You get a benefit that's in excess of what you would normally get under Parts A and B, and you seem to be saying that all you need to avoid the exhaustion requirement here is to be a private provider under Part C. That can't be right. Well, respectfully, and I recognize that if your honors are not inclined to go, my full argument, which is that Medicare Advantage organizations don't even meet the definition of officer-employee when administering Part C benefits generally, but the full argument… Let me just ask you this. If we agree with you, does that mean that all Part C private providers can avoid exhaustion? All Part C private providers, certainly, if you agree with me on my threshold issue, is that Part C plans are not covered, are not officers or employees, and that would be the import of my position, but my second argument… Do you realize that that is a radical position? I don't think it's radical in the sense that the Sixth Circuit and the Zemecki case that we cited in the Ohio State chiropractor made very clear that Medicare Advantage organizations operate in a different sphere. They operate at a distance from the government, from other Medicare providers, but I don't want to belabor that. That is our primary position. I have one clarification. If we were to adopt your position on the officer-employee issue, then there would be no exhaustion required, even if the dispute was over benefits that indisputably were covered by Part A or Part B, correct? No, because enrollees still are subject, and there is a very robust appeal process under the Part C statute that is directed specifically to enrollees. The issue would be simply private provider payment disputes would be separate and not subject to that, and that proposition is not new. It's supported by the Rencare case that we cite and by the Texas Supreme Court case we cite, so it isn't a new proposition, but except acknowledging the reluctance to maybe go as far as I would like the court to go, there is an alternative ground, which is that leaving aside the officer-employee, the case still has to arise under the Medicare Act, and when you're dealing with optional supplemental benefits, optional supplemental benefits by definition are not Medicare benefits. They are privately funded. They are not mandatory. They don't have to be offered. The beneficiary doesn't have to accept them, but when the beneficiary does pay for them, they should be covered, and the exhaustion requirement, a claim for optional supplemental benefits by definition is not a claim for Medicare benefits and therefore wouldn't meet the arising under test. What's your best case for that argument that it doesn't meet arising under? Seems to me that's a fairly broad language. Well, I think the starting point is actually this court's opinion where the court actually found that the language is a claim is inextricably intertwined with a claim for Medicare benefits and this is the language. At the bottom, the plaintiff is complaining about the denial of Medicare benefits. Optional supplemental benefits are not Medicare benefits, and I think other cases, in particular, which recognize that disputes against Medicare advantage organizations by a private payer implicated private payment disputes that did not arise under the Medicare Act. Do you want to save any of your time? I'll save the balance of my time unless there are any other questions, your honor. Very well, thank you. All right, I'm not going to try to pronounce your name because I'm going to mess it up, but counsel for Apelli, please proceed. Thank you very much, your honors. Mo Keshavarzi for Kaiser Foundation Health Plan. Good morning and may it please the court. Your honors, Jet Rescue transported two Medicare advantage enrollees and is suing as their assignee to recover Medicare benefits, yet it contends that Medicare rules and regulations do not apply to its claims and it is entitled to 100% of its unilaterally billed charges. The district court found that Jet Rescue was required to exhaust its administrative remedies and because it failed to do so, the district court dismissed the complaint. We respectfully submit that the district court reached the correct result and this court should affirm for at least three reasons. First, Medicare statutes, rules, and regulations and decisions of this court establish that when a claim against an MAO arises under the Medicare Act, that claim must first be exhausted through the administrative review process. I'm sorry to be so ignorant, but tell me again, what's an MAO? Medicare Advantage Organization, your honor. Okay, right, right, thank you. No problem. As this court held in Dosung Ohm versus Humana, which involved an MAO administering Part D under Medicare exists only under 405G, which requires a decision by the Secretary of CMS in advance of judicial review. Right, but we have to, I mean the problem for you is that the officer or employee language and no court that I'm aware of has really grappled squarely with that textual barrier. Is that right? To some extent, yes, your honor. You are right that in Dosung Ohm, this court in the tenant case, the 11th circuit or in the 11th circuit in the tenant case, did not specifically analyze the question of whether an MAO is an officer employee. That is correct, your honor. However, when you read the opinion, what they do is they start with a discussion of the regulations and they end with the phrase that jurisdiction only exists for a in the third sentence of 405H. It would only make sense for the court to use that language for this court to have used it in Dosung Ohm and for the 11th circuit to have used it in the tenant case if the court was concluding that an MAO is an officer. Yes, I agree with you as a logical matter, but I think probably in reality, nobody made the argument that your opponent is making and so nobody focused on that language in the statute, right? I mean, it's easy to see why courts would skip over that because in the larger scheme of things, yeah, it makes sense that if Congress set up this elaborate process for exhaustion that it would apply, we'd have to deem these private organizations to be officers or employees of the United States. But I'm saying as a textual matter, that's kind of a problem. I mean, maybe you can address it head on, but your brief really kind of skated past it. That's how I read your brief. Let me address that head on, your honor. I'm going to address that head on for you. The first point I would make is this. The regulations, and this is a regulation that Global Jet Rescue does not really address in their brief, and I think it's at the core of, should be at the core of the court's analysis of this issue. Section 422.576 of the regulations says that an organization determination, this is in their and it says an organization determination is binding on all parties unless it is reconsidered through the administrative review process. It speaks in final language that there's no may, there's finality there, that it is binding. And what is an organization determination? As the regulations that lead up to it make clear, and as the tenant decision set, an organization determination means is a decision about benefits. So when Kaiser here said, the amount we were paying you, that's an organization determination. And this regulation, which CMS adopted. Well, counsel, can I, I'm sorry to jump in, but I'm not disagreeing with you at all in terms of your reading of the regulation. I completely agree with you, but I'm saying maybe the text did not allow the agency to do this with respect to these private entities, right? And I'm, yes, I'm getting there, your honor. I think this text manifestation of CMS's last sentence of 405H, when CMS says that an organization determination is binding, when it says that, I submit to you that that is an interpretation by CMS of 405H and CMH concluding that MAOs are officers and employees for purposes of 405H. So that's number one. Number two, why is an MAO beyond that issue and beyond CMS's interpretation, an officer employee? Your honor, Medicare part A and part B at their core involved the government becoming an insurance company and assuming the risk of care for the disabled and the elder. That was Medicare part A and part B as Medicare was originally conceived. In the late nineties, Congress came along and said, what we're going to do is we're going to create this part C. And what part C does at its core is that federal government takes this risk that it holds of providing care to the disabled and the elderly and passes that risk to a private entity and says, you private entity will now hold this risk. So in performing that task, holding the risk and becoming an insurance company for part C enrollees and Medicare Advantage organization is discharging a government function. We are doing something that but for us, the government would have to do. Okay. So that's at its core. We are holding that risk that but for us, the government would perform and would hold. And that's a government function. Counselor, let me ask you this. I think that's about as good an argument as you can make for it. Not that we're bound in any way by this, but is there anything in the committee reports or anything from the Congress or anything that anybody said that says what you did were basically the government saying, look, we're basically acting as an insurance company in part A and B. We're tired of doing this. We're going to let the private sector take over. And they're going to kind of be in our shoes in part C. Anybody say that? Any reports say that? I don't have anything in any specific report that says that, Your Honor, but I would respectfully submit to you that that's manifest from the clear reading of the statute and structure of it. And in fact, this court's discussion of the Medicare Part A, Part B, and Part C in the Kaiser case, the Seventh Circuit's discussion in the Tenet case, I'm sorry, the Eleventh Circuit's decision in Tenet, or the Seventh Circuit's decision in body metric all talk about what the purpose of Part C was. But Judge Watford, if I may, I want to go back to the question you raised because I just gave you a couple of reasons. There's many more. This court held in Dosung Un versus Humana that what the court did there, it involved the question of whether a Part D MAO was acting as an officer. And Judge Watford, as you noted, the court didn't exactly grapple with the issue, but it does talk about the last what kind of floodgates are we opening here if we allow private parties to bring claims against MAOs? It's not just Part C that would be open based on the argument that Jet Rescue is advancing. We're talking about the entire Part D program as well. And so any claim by any private party provider would, under their argument, could circumvent the administrative review process. So my second reason, Judge Watford, is the court's analysis of the issue in the Dosung Un decision. The third reason that I have for you, Your Honor, is the cases that have talked about a fiscal intermediary being an officer. Why is a fiscal intermediary an officer? Those cases... Because in that scenario, it's the government's money that's at play, right? You're right, Your Honor, but the only distinction between us and a fiscal intermediary is that a fiscal intermediary takes the government's money and spends it on a per service charge, whereas we get capitated payments and then pay that money out as, you know, while we hold the risk. I submit to you, Judge Watford, that I think that's a distinction without a difference. And the reason is, if an MAO pays more in a given year, then it can recoup those amounts from the government. There are risk corridors within the Medicare program that allow for an MAO that loses money beyond a certain amount to go back to the federal government and get more money. So the more we spend, the more the government ultimately has to pay. It is true that it's not a per service charge and payment, but at the same time, Your Honor, there's a direct link between how much we spend and what the government spends. Where could we look for that information that you would have the right, if you went underwater, as in on the MAO basis, that you could get reimbursed from the government? That might be an important point. Your Honor, you will find all of that in the regulations that are part 42 under the Medicare Advantage program. You have a specific site? I will look for the specific site right now, Your Honor. So subpart G, payments to Medicare Advantage organizations. It talks about annual capitation payments, adjustment to capitation payments, risk data, and that starts in section 422.300. And it goes to 422.300. I have one follow-up question. Yes, I just want to say one more thing, Judge Watford, on this notion of fiscal intermediaries. It is true that one reason fiscal intermediaries are found to be government agents, not agents, I'm sorry, officers, is the payment of the government's money, that they're spending the government's money. But another reason is that they're performing administrative services. And we perform the same administrative services. In fact, the appeal process that's there for decisions of fiscal intermediaries is virtually identical to the appeal process that there is for MAOs in Part C. So go ahead, Judge Watford. So my last question. So here we have a dispute on your part as to whether this service would or would not have been covered. Is it under Part A or Part B? I can't remember which part of original Medicare. Part B. It would be Part B. Okay. And I get why in Part A, when we're dealing with a Part A or Part B benefit, I get exactly why Congress would have wanted to shunt everything through this administrative review process for many of the reasons you talked about. But let's say that we had a service that was indisputably not part of original Medicare. It was just something, as your opponent is arguing here, totally optional. The government would never ever think about funding it. So there would never be a question of the government, you know, having paid out money for that. It's just a purely private, you know, between the private health organization and the patient, and the enrollee, rather. Why in the world would Congress have wanted all of those disputes to go through the Medicare folks? But those folks probably don't even want to deal with it because they say, we have no expertise in this. We never deal with these kinds of claims. So why would, that's what I guess I get stuck on. So maybe you can help me there. I'm going to give you a couple of answers. Answer number one, your honors, I want to be very clear that while Jet Rescue contends that these are optional supplemental benefits that are not covered, we do not agree. In fact, the reason Kaiser paid the amount that it did is because Kaiser believes that the regulation that provides for ambulance transport under Part D applies. So we believe this is a service that would be available on Part B. That's the first answer. The second answer to your question, your honor, is that in the Medicare system, in the Medicare context, there is no benefit that is devoid of any impact on the government, right? Because the way it works, there is no benefit that has been created. Maybe something will come along. I'll take Part D, for example. While optional supplemental benefits might be optional under Part C, the entire Part D program, the entire Part D program is optional. There's no benefit under Part D that would be available under Part A or Part B if a Part D M.A.O. didn't provide it. But nonetheless, it has an impact on the government because of the capitation system and because of the way M.A.Os are able to go back to the government and get additional expense. Any burden on an M.A.O. in terms of cost might impact the M.A.O.'s ability to play in the market. And Congress wants more M.A.Os out there to be able to assist. But the cases talk about why M.A.Os were created. Congress wanted to encourage people to enter in the market. So any effect on an M.A.O. in terms of cost has some effect, direct or indirect, ultimately on the Medicare program. There's a couple of points. I'm running out of time, so I apologize if I'm speaking quickly, but I want to get a couple of points across. Judge Smith, you talked about UCL injunction. This court, in their first amended complaint, they allege 27 times that they're suing based on an assignment. They're standing in the shoes of the enrollees asking for Medicare benefits. In paragraph 5 of their complaint, they allege that this first amended complaint arises from the claims of patients X and Y. So this case clearly is a claim for benefits. There's no question about that. And this case, in the Kaiser case, noted that injunctive relief does not bring a case out of the purview of exhaustion. But may I just take 30 seconds to go over to just raise an issue? And this goes back to the court's question of how do we reconcile 405H with the regulations? I think the arguments that we have made should let the court to conclude that an M.A.O. administering Part C benefits is an M.A.O. administering Part C benefits. I think there's a way for the court to still affirm. 405H is a jurisdiction stripping statute. If the court found 405H doesn't apply, this court would still have jurisdiction here because as they allege in their first amended complaint, there's diversity jurisdiction. So we're fine on the jurisdiction basis. Then the court could affirm on an independent basis that the regulations I read, 576, mandate exhaustion, and they were required to exhaust, and the court affirm on the alternative ground of a 12B6 and say that an M.A.O. is not an officer, but we nonetheless affirm under 576 because exhaustion is mandatory. I think that alternative is available to the court, but we certainly believe an M.A.O. is an officer when discharging Part C benefits. Okay. Let me ask my colleagues whether either has any additional questions here for counsel for Kaiser. No. Okay. Thank you. Thank you, honors. All right. Back to Global Rescue Council. You want to use your remaining time to rebut. Sure. Just very briefly regarding, I mean, this is a dispute over optional supplemental benefits. Council suggested that they disagree and they claim that these were benefits that are payable under Part B. We readily concede that we would not have a claim under Part B. We're not seeking any benefits under Part B. We are seeking what we contend are Part C benefits. That only requires an interpretation of the plan to determine whether the coverage was available or not. When you're dealing with optional supplemental benefits, all the concerns about triggering additional capitated risk are non-existent. They are paid and funded in full by the enrollee. They're not funded at all by the government. They're expressly excluded from the definition of Medicare benefits. With respect to Part D, that was the subject of the Dosung-Eum case. That case very clearly directly said that the reason that it was finding that exhaustion was required in that case was that the plaintiff had not said that the prescription drug provider, not an MAO, prescription drug provider in that case, had not promised to do anything other than comply and pay the benefits that were payable that would have otherwise been covered by the Medicare Act. Counsel, let me ask you just in your remaining time, can you respond to your opponent's argument that essentially the reason Congress would have wanted all of these disputes affecting these private entities to have to go through the exhaustion process is that there is this, I guess it's kind of like a backdoor mechanism for them to go back to the government and say, we're underwater. You need to reimburse us at a somewhat higher rate. Do you agree with that? There are ways that the payments are to be adjusted, but as the Rencare case said very clearly, the government's risk is extinguished. With the government's risk extinguished, even when administering benefits that are traditionally payable under Medicare, the government's risk is extinguished. With that, with the government's risk extinguished, it's a private payment dispute. In our case, it's even a stronger case because we're talking about optional supplemental benefits where there would not even be a remote opportunity for Kaiser to go back and say we're underwater. That's a typical private insurance decision. And do you have any regulation that would buttress that point? Well, the regulation that we cite over, you know, in our brief 42 CFR 422 100 C21B, we cited, it is the definition of optional supplemental benefits, which it says health services not covered by Medicare that are purchased at the option of the MA enrollee and paid for in full, directly by or on behalf of the Medicare enrollee in the form of premiums versus cost share. Right. But that doesn't respond to his point that if you are in the setting of, in this case, Kaiser, if you perform this role under Part C and you're underwater, you can go back to the government and seek additional money. Do you dispute that? Well, the regulation 42 CFR 422.306, that was one of the regulations or part that was subpart G, subpart G talks about annual adjustments and there's a standard formula. But you won't see in this subpart G any reference to an adjustment based on optional supplemental benefits. There are a whole bunch of different formulas in terms of how that adjustment is made. It's very, very strictly regulated. And the concept of optional supplemental benefits, um, just by, by virtue of being excluded from, uh, would not, um, certainly not, uh, referenced in the subpart. Okay. Your, your time is up on behalf of the court. May I ask both counsel to send us a 28 J letter addressing the question of whether in this case, Kaiser, if it were underwater on the role that it performs here could go back to the government to get some additional money to help balance its books on this, on this point. If you could do that for us, we'd appreciate it very much. Do either of my colleagues have additional questions, uh, for counsel, for a global rescue? All right. Thanks to both counsel for your arguments. Very helpful. This is a, obviously an interesting and challenging case in which no one wants to be a textualist. Thank you, Your Honor. Thank you very much.
judges: TASHIMA, SMITH, WATFORD